## HARGER v. Commissioners of WASHINGTON COUNTY.

1. Error lies on an award of execution.
2. A. having been acquitted on an indictment, but ordered by the verdict to pay the costs of prosecution, gave a bond on which judgment was confessed, conditioned to pay the costs imposed by the Court. No sentence was passed. A *fi. fa.* issued before taxation of costs, is irregular—but a sentence is not essential.
3. The record must show the amount due for costs on taxation, or it will not sustain such an execution for them.

IN error from the Common Pleas of Washington.

The plaintiffs in this case entered judgment under a warrant of attorney upon a bond conditioned that " the parties above bounden shall well and truly pay the costs imposed upon George Harger, by the Court of May Sessions, 1844, of which he, the said George Harger, in this case stands charged, within twelve months from the date of their obligations."

George Harger had been tried on an indictment, and the verdict was not guilty, defendant to pay the costs of prosecution.

The bond was given the day after the verdict, and no sentence or judgment was entered.

It appeared that there was an entry on the record—" Taxation of costs continued until July 22, 1844; costs taxed;" but there was nothing on the record to show the amount or items allowed.

A *fi. fa.* issued to collect the sum certified by the clerk of the Quarter Sessions to be the amount of the costs.

The defendant moved on affidavit to set it aside, and to be let into a defence on the plea of payment, which was refused.

*Alden,* for the plaintiff in error.—There was nothing to determine the amount to be levied until the plaintiff had caused it to be ascertained by verdict: 4 T. R. 275, 493, 648; 2 Saund. 107; Tidd's Prac. 514-15; 1 Chit. Rep. 619, 626; 2 Dall. 380. By the contract he was to pay only such costs as he was sentenced to pay, and no sentence has been pronounced.

*Watson,* contrâ.—The granting or refusing the rule was matter of discretion, and error does not lie: 1 Rawle, 324; 6 Watts, 26; 2 W. & S. 280.

BELL, J.—There can be no doubt that error lies on an award of execution: 1 Lord Raymond, 98; Cassell *v.* Duncan, 2 S. & R. 57; and it has been expressly determined this rule embraces a *fi. fa.* improvidently issued for costs not legally due, if that be apparent of record: Barnett *v.* Ihrie, 1 Rawle, 53. The objection made to the removal of these executions is therefore untenable, and the question whether they were improvidently issued, is properly presented for determination here.

The record brought up shows that George Harger, one of the defendants, was acquitted of the offence of which he stood indicted in the Quarter Sessions of Washington county, but the jury directed him to pay the costs of prosecution. This was on the 29th of May, 1844. He was not sentenced in the usual form to pay the costs, or to give security to the sheriff of the county, to pay them within ten days; but the day after his acquittal, he and the other defendants executed the bond with warrants of attorney, by virtue of which the judgment now sued was subsequently entered. It is objected that this was intended to secure only the payment of such costs of prosecution as Harger, the defendant in the indictment, might be sentenced to pay by the Court in which he was tried; and no sentence having been in fact pronounced, the condition which lies at the foundation of the judgment was never forfeited. But this position is clearly erroneous. The condition is that the obligors shall "pay the costs imposed on George Harger by the Court of May Sessions, 1844, of which he, the said George Harger, in this case stands charged." This very clearly has reference to the verdict of the day before, and to the agreement of the commissioners of the county to relieve the defendant by an application of the public

funds, on the credit of himself and sureties. The bond speaks of "costs imposed," and as a sentence had not been formally pronounced by the Court, the language used can only be referred to the finding of the jury, of which a formal judgment would have been but an echo. Very probably, as suggested at the bar, the object of the principal obligor and his sureties was to avoid the exposure attendant on a public sentence; but at all events it is obvious they intended to bind themselves irrespective of the fact that sentence had not been rendered, a ceremony only necessary where the object is to compel payment by a direct exertion of the power residing in the Court of Quarter Sessions.

This ground is not however that urged principally in this Court, nor indeed, as it is said, in the Court below. There, as here, the motion to set aside the executions was based mainly upon the legal position that a *fi. fa.* cannot regularly be issued under the judgment confessed against the defendants, until the sum due for costs be in some way definitively ascertained. In this we think they are right. But their claim to be let into a defence under the judgment by a plea of payment, with leave to give equitable matter in evidence, is wholly inadmissible. What equitable matter could be introduced into an inquiry touching the sum due for legal costs, it is difficult to imagine; and a jury sitting in the Common Pleas, to tax a bill of costs which accrued in the Quarter Sessions, would, to say the least of it, present a novel spectacle. In truth, the idea of an issue to be directed by the Common Pleas, was abandoned on the argument, for the suggestion that the plaintiffs should be put to their *scire facias*, under the provisions of the 8 and 9 William 3. But Gray *v.* Longstreth, 1 Watts, 60, cited for the plaintiffs in error, shows that judgments entered by virtue of warrants of attorney are not within the purview of that statute; and, in answer to another suggestion, nothing is hazarded in saying, that the present does not present a case for a writ of inquiry of damages. What then is the proper course to be pursued in ascertaining the sum to be levied? It appears to us that, in the instance before us, this inquiry admits of easy answer. Every Court possesses the inherent power to determine, in a summary way, the legal costs that have accrued in the course of any judicial proceeding had before it. Under an unvarying practice this is effected by the taxation made by its prothonotary or clerk, from whose conclusions an appeal lies to the Court itself. Of course, in the Courts of Quarter Sessions this duty is discharged by their

Y

respective clerks, who, in criminal cases, usually certify the taxed bills of costs to the commissioners of the county, where these officers have aught to do with the collection or payment of them, and the bills thus furnished are regarded as conclusive, if unappealed from. In the case in hand, the Clerk of the Quarter Sessions of Washington county was the proper person to declare, in the first instance, the amount of the costs payable by Harger, under the direction of the verdict, and his certified statement, filed with the prothonotary of the Common Pleas, would, while unappealed from, be sufficient evidence of the amount of the costs to be levied. It is said such a taxation was actually made, and it is true the record of the proceedings had under the indictment exhibits this memorandum: "Taxation of costs continued until 22d July, 1844. Costs taxed." But this is wholly insufficient. Even the great looseness of practice and modes of entry tolerated in Pennsylvania, will not countenance such uncertainty as is here exhibited. No items are mentioned, and no sum is set out. The very object of taxation is thus defeated, for it is impossible, with any show of reason, to esteem such imperfect notes as furnishing a sufficient warrant for levying the comparatively large sum here collected for costs. Nor is this defect remedied by the formal statement appended to the *fi. fa.* itself, for it nowhere appears this received the sanction of the Court or its officer. It must then be taken as though no effort to procure a taxation had been made, and the executions are thus left without the necessary support; the record had not so far matured as to warrant the last step, and for this reason the final process must be set aside. But it by no means follows, that restitution of the sum collected under the *alias fi. fa.* is to be awarded. Restitution is not of mere right. It is *ex gratia*, resting in the exercise of a sound discretion, and the Court will not order it where the justice of the case does not call for it, or where the process is set aside for a mere slip, and there is danger that the plaintiff may lose his demand: Fitzalden *v.* Lee, 2 D. 205; S. C. 1 Y. 160, 207; Baker *v.* Smith, 4 Y. 192; Kirk *v.* Eaton, 10 S. & R. 103. In this instance the defendants below have been largely indulged. The money secured by their bond was due in May, 1845, and though from time to time they paid portions of the debt, the plaintiffs allege a large balance remains due in 1849. This may be a mistake, but if not, it certainly shows the defendants are not entitled to favour. But we are principally influenced to refuse an order of restitution at this time, by the consideration that it might endanger

the plaintiff's demand, and that no great hardship will be imposed on the defendants by postponing them for the brief period which must elapse before the actual sum due can be adjusted by a proper taxation. To give an opportunity for this, the record will be remitted, when either party may cause the taxation to be made, and the Court below will thus be furnished with *data* by which it can understandingly adjust the rights of the respective parties. If too much has been received by the plaintiffs, they may be ordered to refund; if too little, process may be awarded to collect the residue. It has not been intimated that any reason exists for ordering the money into Court, to await the ultimate action of the Common Pleas, and as this is not necessary to give full control of the subject to that tribunal, we shall content ourselves with remitting the record for its further action.

> And now, to wit, Nov. 2d, 1849, it is ordered that the said writs of *fieri facias*, issued *sur* the judgment confessed in this case, be set aside and annulled, and that the record be remitted to the said Court of Common Pleas, with directions to proceed thereon.

COULTER, J., dissented.